IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

FILED
JUL 1 2016
CLERK, US DISTRICT COURT
NEWPORT NEWS, VA

STARR INDEMNITY & LIABILITY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, LIBERTY INSURANCE UNDERWRITERS INC., ACE AMERICAN INSURANCE COMPANY, CONTINENTAL CASUALTY COMPANY and ASPEN AMERICAN INSURANCE COMPANY,

Plaintiffs,

v.

LUMBER LIQUIDATORS HOLDINGS, INC., MACON F. BROCK, DOUGLAS T. MOORE, JOHN M. PRESLEY, PETER B. ROBINSON, MARTIN F. ROPER, THOMAS D. SULLIVAN, ROBERT M. LYNCH, JIMMIE L. WADE, NANCY M. TAYLOR, CARL R. DANIELS, DANIEL E. TERRELL, WILLIAM K. SCHLEGEL, DAVID CHAU, ADRIAN CANTU, RYAN RENY, CALVIN ROBERTSON, CHUCK HALL, JERRID DENNEY, MICHAEL FREEMAN, DANNY WU, LISA KUCA, ANDREW EATON, STEVEN FLORES, PAUL KUZYK, STEVEN SERENO, SHANE GAO, JANET XU, CHARLES BOOTH, ERNEST LUCKETT, BRANDON IOVINO, MICHAEL BINGAMAN, THOMAS BERRY, PHILAN JIE, ROCKY YANG, ALEXANDRA HUGHES, MICHAEL WANG, JEFFRY M. GRIFFITHS, JANET M. ELEY, SARAH SCHOENFELD, CHRISTOPHER BATTIN, MICHAEL WARD, JERRICO JORDON, RALPH AUBRY AMADEO, JR. and PARTIES UNKNOWN,

Defendants.

Civil Action No.: 4:16cv114

**COMPLAINT FOR INTERPLEADER**

COMES NOW Starr Indemnity & Liability Company ("Starr"), Travelers Casualty and Surety Company of America ("Travelers"), Liberty Insurance Underwriters Inc. ("Liberty"), ACE American Insurance Company ("ACE"), Continental Casualty Company ("CNA"), and Aspen American Insurance Company ("Aspen"), and for their claim for relief allege as follows:

## NATURE OF THE ACTION

1. This is an action for interpleader brought pursuant to 28 U.S.C. §§ 1335, 1397 and 2361 and Fed. R. Civ. P. 22. As described more fully below, Starr, Travelers, Liberty, ACE, CNA and Aspen (collectively, the "Insurers") are insurance carriers who issued directors and officers liability policies (collectively, the "Policies") to Lumber Liquidators Holdings, Inc. ("Lumber Liquidators" or the "Company"). As described more fully below, the Policies provide, subject to their terms, conditions, exclusions, and limitations, directors and officers liability coverage to (i) **Executives** and, solely with respect to **Securities Claims** or other **Claims** made and continuously maintained against an **Executive**, **Employees** of Lumber Liquidators, and (ii) Lumber Liquidators for a **Securities Claim** and for amounts it indemnifies an **Insured Person** for a **Claim.**[1]

2. The Defendants (collectively referred to as the "Actual or Putative Insureds") have requested payments under the Policies in connection with matters for which the Defendants maintain there is coverage under the Policies. In light of on-going investigations and claims involving the Company, the Insurers expect to receive future, additional demands for payment under the Policies from the Defendants and other persons claiming to be **Insureds**, or otherwise claiming to be entitled to proceeds of the Policies.

3. The Insurers presently have demands from the Defendants for payment of proceeds of the Policies that exceed the remaining aggregate limits of liability of the Policies.

[1] Terms in bold are defined in the Policies.

4. In the face of conflicting and competing demands under the Policies for payment of defense costs and settlement amounts and based on the high likelihood of future demands for additional payments under the Policies, the Insurers bring this interpleader action for the Court to determine allocation of the proceeds of the Policies among these demands. The Insurers stand neutral with respect to the appropriate use and allocation of those remaining limits of liability among the competing demands.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of this case under 28 U.S.C. § 1335 and 28 U.S.C. § 1367 because there are two or more adverse claimants of diverse citizenship who demand or may demand the right to payment of money of the value of $500.00 or more, which is in the custody or possession of the Insurers.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Venue is proper in the federal district pursuant to 28 U.S.C. § 1397 because one or more of the claimants reside in this judicial district.

**THE PARTIES**

7. Plaintiff Starr Indemnity & Liability Company is an insurance company organized and incorporated under the laws of Texas, with its principal place of business in New York. Starr is licensed to do business in the Commonwealth of Virginia.

8. Plaintiff Travelers Casualty and Surety Company of America is an insurance company organized and incorporated under the laws of Connecticut, with its principal place of business in Connecticut. Travelers is licensed to do business in the Commonwealth of Virginia.

9. Plaintiff Liberty Insurance Underwriters Inc. is an insurance company organized and incorporated under the laws of Illinois, with its principal place of business in Massachusetts. Liberty is licensed to do business in the Commonwealth of Virginia.

10. Plaintiff ACE American Insurance Company is an insurance company organized and incorporated under the laws of Pennsylvania, with its principal place of business in Pennsylvania. ACE is licensed to do business in the Commonwealth of Virginia.

11. Plaintiff Continental Casualty Company is an insurance company organized and incorporated under the laws of Illinois, with its principal place of business in Illinois. CNA is licensed to do business in the Commonwealth of Virginia.

12. Plaintiff Aspen American Insurance Company is an insurance company organized and incorporated under the laws of Texas, with its principal place of business in Texas. Aspen is licensed to do business in the Commonwealth of Virginia.

13. Defendant Lumber Liquidators Holdings, Inc. is a corporation organized and incorporated under the laws of Delaware, with its principal place of business in Toano, Virginia.

14. Defendant Macon F. Brock is or was a member of the Board of Directors of the Company (the "Board"). Mr. Brock is a citizen of the State of Florida.

15. Defendant Douglas T. Moore is or was a member of the Board. Mr. Moore is a citizen of the Commonwealth of Virginia.

16. Defendant John M. Presley is or was a member of the Board. Mr. Presley is a citizen of the Commonwealth of Virginia.

17. Defendant Peter B. Robinson is or was a member of the Board. Upon information and belief, Mr. Robinson is a citizen of the District of Columbia.

18. Defendant Martin F. Roper is or was a member of the Board. Mr. Roper is a citizen of the Commonwealth of Massachusetts.

19. Defendant Thomas D. Sullivan is or was the President, Chief Executive Officer, and a director of the Company. Mr. Sullivan is a citizen of the state of Florida.

20. Defendant Robert M. Lynch is or was the President and Chief Executive Officer of the Company. Mr. Lynch is a citizen of the United States.

21. Defendant Jimmie L. Wade is or was a member of the Board. Mr. Wade is a citizen of the Commonwealth of Virginia.

22. Defendant Nancy M. Taylor is or was a member of the Board. Ms. Taylor is a citizen of the Commonwealth of Virginia.

23. Defendant Carl R. Daniels is or was a Senior Vice President of the Company. Mr. Daniels is a citizen of the Commonwealth of Virginia.

24. Defendant Daniel E. Terrell is or was the Chief Financial Officer of the Company. Mr. Terrell is a citizen of the Commonwealth of Virginia.

25. Defendant William K. Schlegel is or was the Chief Merchandising Officer of the Company. Mr. Schlegel is a citizen of the Commonwealth of Virginia.

26. Defendant Jeffrey M. Griffiths was formerly the Chief Executive Officer of the Company. Mr. Griffiths is a citizen of the Commonwealth of Pennsylvania.

27. Defendant Janet M. Eley is or was the Manager, Global Quality Assurance of the Company. Ms. Eley is a citizen of the Commonwealth of Virginia.

28. Defendant Sarah Schoenfeld is or was a Senior Buyer of the Company. Ms. Schoenfeld is a citizen of the Commonwealth of Virginia.

29. Defendant Christopher Battin is a former member of the Board. Mr. Battin is a citizen of the Commonwealth of Virginia.

30. Defendant Michael Ward is or was the Director of Loss Prevention and Safety for Lumber Liquidators Inc. Mr. Ward is a citizen of the Commonwealth of Virginia.

31. Jerrico Jordon is or was an Employee of the Company. Mr. Jordan is a citizen of the State of Georgia.

32. Defendant David Chau is or was an **Employee** of the Company. Mr. Chau is a citizen of Shanghai, China.

33. Defendant Adrian Cantu is or was an **Employee** of the Company. Mr. Cantu is a citizen of the State of Texas.

34. Defendant Ryan Reny is or was an **Employee** of the Company. Mr. Reny is a citizen of the State of New Hampshire.

35. Defendant Calvin Robertson is or was an **Employee** of the Company. Mr. Robertson is a citizen of the State of Minnesota.

36. Defendant Chuck Hall is or was an **Employee** of the Company. Mr. Hall is a citizen of the State of Florida.

37. Defendant Jerrid Denney is or was an **Employee** of the Company. Mr. Denney is a citizen of the State of Indiana.

38. Defendant Michael Freeman is or was a Regional Manager of the Company. Upon information and belief, Mr. Freeman is a citizen of the State of Texas.

39. Defendant Danny Wu is or was an **Employee** of the Company. Mr. Wu is a citizen of Shanghai, China.

40. Defendant Lisa Kuca is or was a Vice President of the Company or a subsidiary of the Company. Ms. Kuca is a citizen of the Commonwealth of Virginia.

41. Defendant Andrew Eaton is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Eaton is a citizen of the State of Nevada.

42. Defendant Steven Flores is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Flores is a citizen of the State of Michigan.

43. Defendant Paul Kuzyk is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Kuzyk is a citizen of the State of Colorado.

44. Defendant Steven Sereno is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Sereno is a citizen of the State of Texas.

45. Defendant Shane Gao is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Gao is a citizen of Shanghai, China.

46. Defendant Janet Xu is or was an **Employee** of the Company or a subsidiary of the Company. Mr. Xu is a citizen of Shanghai, China.

47. Defendant Charles Booth is or was and **Employee** of Lumber Liquidators Inc. Mr. Booth is a citizen of the Commonwealth of Pennsylvania.

48. Defendant Ernest Lucket is or was and **Employee** of Lumber Liquidators Inc. Mr. Lucket is a citizen of the State of Michigan.

49. Defendant Brandon Iovino is or was and **Employee** of Lumber Liquidators Inc. Mr. Iovino is a citizen of the State of Indiana.

50. Defendant Michael Bingaman is or was and **Employee** of Lumber Liquidators Inc. Mr. Bingaman is a citizen of the State of Colorado.

51. Defendant Thomas Berry is or was and **Employee** of Lumber Liquidators Inc. Mr. Berry is a citizen of the State of North Carolina.

52. Defendant Philan Jie is or claims to be an **Insured Person**. Mr. Jie is a citizen of Shanghai, China.

53. Defendant Rocky Yang is or claims to be an **Insured Person**. Mr. Yang is a citizen of Shanghai, China.

54. Defendant Alexandra Hughes is or claims to be an **Insured Person**. Mr. Hughes is a citizen of the Commonwealth of Virginia.

55. Defendant Michael Wang is or was and **Employee** of the Company. Mr. Wang is a citizen of Shanghai, China.

56. Defendant Ralph Aubrey Amadeo, Jr. is or was and **Employee** of the Company. Mr. Amadeo is a citizen of the Commonwealth of Virginia.

57. Defendant Parties Unknown are unknown third party claimants and unknown actual or putative **Insureds** under the Policies who have or may demand payment under the Policies.

## FACTS

58. Starr issued Resolute Portfolio for Public Companies Policy No. SISIFNL20094512 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "Primary Policy"). The Primary Policy has an aggregate limit of liability of $10 million, inclusive of **Defense Costs**, subject to any applicable self-insured retention.

59. Travelers issued ExecutiveChoice Policy No. 105716790 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "Travelers Excess Policy"). The Travelers Excess Policy has an aggregate limit of liability of $5 million which attaches after the

limit of liability of the Primary Policy is exhausted by reason of actual payment of covered loss, as more particularly set forth in the Travelers Excess Policy.

60. Liberty issued Management Liability and Professional Liability Follow Form Excess Policy No. DO3AT608812006 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "Liberty Excess Policy"). The Liberty Excess Policy has an aggregate limit of liability of $5 million which attaches after the limits of liability of the Primary Policy and the Travelers Excess Policy are exhausted by reason of actual payment of covered loss, as more particularly set forth in the Liberty Excess Policy.

61. ACE issued Executive Liability Insurance Policy No. DOX G25534967 004 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "ACE Excess Policy"). The ACE Excess Policy has an aggregate limit of liability of $5 million which attaches after the limits of liability of the Primary Policy, the Travelers Excess Policy and the Liberty Excess Policy are exhausted by reason of actual payment of covered loss, as more particularly set forth in the ACE Excess Policy.

62. CNA issued Excess Insurance Policy No. 425272242 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "CNA Excess Policy"). The CNA Excess Policy has an aggregate limit of liability of $5 million which attaches after the limits of liability of the Primary Policy, the Travelers Excess Policy, the Liberty Excess Policy and the ACE Excess Policy are exhausted by reason of actual payment of covered loss, as more particularly set forth in the CNA Excess Policy.

63. Aspen issued Follow Form Excess Policy No. MCA9A2A12 to the Company for the policy period of December 9, 2012 to December 9, 2013 (the "Aspen Excess Policy"). The Aspen Excess Policy has an aggregate limit of liability of $5 million which attaches after the

limits of liability of the Primary Policy, the Travelers Excess Policy, the Liberty Excess Policy, the ACE Excess Policy and the CNA Policy are exhausted by reason of actual payment of covered loss, as more particularly set forth in the Aspen Excess Policy. A true and correct copy of the Aspen Excess Policy is attached as Exhibit 6. (The Travelers Excess Policy, the Liberty Excess Policy, the ACE Excess Policy, the CNA Policy, and the Aspen Excess Policy are collectively referred to as the "Excess Policies.")

64. The Excess Policies each afford coverage in accordance with the terms, conditions, definitions, exclusions and limitations as set forth in the Primary Policy, except as otherwise provided by the terms, conditions and endorsements of each Excess Policy.

## THE MATTERS SUBMITTED FOR COVERAGE

65. The Actual or Putative Insureds have submitted claims for coverage under the Policies for **Loss** (including defense costs, settlement amounts and judgments) which has been incurred in connection with numerous actual or alleged claims, including but not limited to, the following (collectively, the "Underlying Matters"):

a. *Kiken v. Lumber Liquidators Holdings, Inc.*, No. 4:13cv00157-AWA-DEM (E.D. Va.) (the "Kiken Action");

b. *City of Hallandale Beach Police Officers' & Firefighters' Personnel Retirement Trust v. Lumber Liquidators Holdings, Inc.*, No. 1:14cv1227-AJT-IDD (E.D. Va.) (the "City of Hallandale Action");

c. The consolidation of the Kiken Action and the City of Hallandale Action titled *In re Lumber Liquidators Holdings, Inc. Securities Litigation*, No. 4:13cv00157-AWA-DEM (E.D. Va.) (the "Securities Litigation");

d. *Klein v. Brock*, No. 4:15-cv-16 (E.D. Va.) (the "Klein Action");

e. *Doan v. Brock*, No. 15-cv-25 (E.D. Va.) (the "Doan Action");

f. *Amalgamated Bank v. Brock*, No. 15-cv-30 (E.D. Va.) (the "Amalgamated Bank Action");

g. The Consolidation of the Klein, Doan and Amalgamated Bank Actions titled *In re Lumber Liquidators Holdings, Inc. Shareholder Derivative Litigation*, No. 4:15-cv-16 (E.D. Va.) (the "Derivative Litigation");

h. *Costello v. Sullivan*, C.A. No. 10764-CB (Del. Ch.);

i. *McBride v. Sullivan*, No. 830-CL-15000453-00 (Va. Cir. Ct.);

j. An investigation by the Department of Justice (the "DOJ") of the Company and certain of its directors, officers and/or employees pertaining to the Lacey Act and formaldehyde in the Company's products; and

k. An investigation by the Securities and Exchange Commission (the "SEC") of the Company and potentially others.

66. The Actual and Putative Insureds have sought coverage for the Underlying Matters under the Policies, which collectively afford up to an aggregate of $35 million of coverage subject to the terms and conditions of the Policies.

67. $9 million of the limit of liability of the Primary Policy has been exhausted through the payment by Starr of covered **Loss** incurred by or on behalf of all or some of the Actual and Putative Insureds in connection with the Underlying Matters. As a result, $26 million of the Policies' original $35 million of collective limits of liability remain available (the "Remaining Limits").

**DEMANDS AGAINST THE POLICIES**
**EXCEED THE REMAINING LIMITS**

68. The Insurers have been advised of agreements in principle to settle the Securities Litigation and the Derivative Litigation (collectively, the "Settlements"). Some of the Actual or Putative Insureds have demanded that the Insurers pay the monetary portion of the Settlements. The Settlements, if consummated and approved by the Court, would exhaust the Remaining Limits.

69. In addition to the Settlements, some of the Actual or Putative Insureds have demanded that the Insurers pay defense costs which have been and will continue to be incurred in connection with the Underlying Matters, only some of which will be resolved and terminated as a result of the Settlements. Approximately $1 million of defense costs have been presented to the Insurers for payment but have not been paid by the Insurers due to the conflicting and competing demands for the Remaining Limits.

70. The Insurers will likely continue to receive demands for payments of defense costs incurred by or on behalf of some of the Actual or Putative Insureds in connection with both the completion of the Settlements and the continuing defense of the Underlying Matters which are not resolved by the Settlements.

71. The Remaining Limits are insufficient to fund both the Settlements and the defense costs already incurred and to be incurred by or on behalf of some of the Actual or Putative Insureds in connection with the Underlying Matters.

72. If the Remaining Limits are used to fund the Settlements, the Actual or Putative Insureds would be left uninsured for defense costs and other loss incurred in connection with the remaining Underlying Matters, potentially subjecting the Insurers to claims that the Policies'

collective limits of liability were improperly paid by the Insurers for the benefit of some **Insureds**, but not others.

## COUNT ONE -- INTERPLEADER

73. The Insurers repeat and re-allege the allegations of paragraphs 1 through 72 of this Complaint for Interpleader as if fully set forth herein.

74. The Insurers have issued directors and officers liability insurance policies having individual and collective aggregate limits of liability of more than $500.

75. The Insurers are prepared and contemporaneous with the filing of this Complaint separately moved this Court for leave to deposit the Remaining Limits into the registry of the Court.

76. There are two or more adverse claimants, of diverse citizenship, who either are demanding, or may demand some, or all of the Remaining Limits.

77. The Insurers have a bona fide concern that demands of payment from the Policies will significantly exceed the Remaining Limits. Thus, any attempt by the Insurers to make payment in response to one demand may lead to vexatious and multiple litigations from others who also seek to obtain payment from the proceeds of the Policies, and the Insurers face the risk that Defendants may obtain inconsistent decisions exposing the Insurers to multiple liabilities in excess of the Remaining Limits.

78. The Insurers stand neutral as to the rights of the respective parties who may claim to be entitled to payment under the Policies, and seek discharge from any and all obligations and liabilities under or relating to the Policies.

WHEREFORE, the Insurers respectfully request that the Court:

a. allow the Insurers to deposit into the registry of the Court the sum of $26 million, being the Remaining Limits;

b. issue an Order authorizing service by publication to the Parties Unknown;

c. enter judgment discharging the Insurers and any and all of their current and former agents, representatives and affiliates (including but not limited to, their subsidiaries and parent companies), from all further obligations and liability relating in any way to the Policies or any demands that may be made in connection with the Policies;

d. enter a preliminary and permanent injunction barring and enjoining Defendants from:

i. asserting any claims, rights, causes of action, or demands of whatever nature, whether known or unknown, foreseen or unforeseen, under or relating to the Policies against the Insurers and each of their respective parents, subsidiaries, affiliates, insurers, reinsurers, directors, officers, employees, agents, representatives, attorneys, and their respective heirs, executors, administrators, successors and assigns; and

ii. instituting, commencing, and/or prosecuting any arbitration proceeding, or any legal proceeding in any state or federal court, against the Insurers and their respective parents, subsidiaries, affiliates, insurers, reinsurers, directors, officers, employees, agents, representatives, attorneys, and their respective heirs, executors, administrators, successors and assigns, with respect to any claims, causes of whatever nature, whether known or unknown, foreseen or unforeseen, that have been, could have been, or could be asserted in any form, either directly or indirectly, based upon, arising out of, relating to, concerning, resulting from or in consequence of, or in connection with:

1. the Policies;

2. any past, present or future actual or putative **Claim** or notice of circumstances which could give rise to any **Claim** under the Policies;

3. any past, present or future actual or putative **Loss** under the Policies incurred by any Actual or Putative Insured, including but not limited to defense costs, settlements, judgments and any other loss;

4. any alleged right under the Policies to recover loss or any other benefits; and

5. any and all duties, liabilities and obligations under or related to the Policies;

e. interplead the Defendants and adjudge and determine to whom the Remaining Limits should be disbursed and in what amounts; and

f. grant any and all further relief that this Court may deem appropriate, equitable and just.

Respectfully submitted,

Dated: June 30, 2016

WILEY REIN LLP

By: ______________________

Mary Catherine Martin
*mmartin@wileyrein.com*
(VSB #73186)
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel for Starr Indemnity & Liability Company, Travelers Casualty and Surety Company of America, Liberty Insurance Underwriters Inc., ACE American Insurance Company, and Aspen American Insurance Company*

BAILEY CAVALIERI, LLC

Michael R. Goodstein
*mgoodstein@baileycav.com*
(VSB #31700-Inactive Status)
10 W. Broad Street, Suite 2100
Columbus, OH 43215
(614) 229-3231

*Co-Counsel for ACE American Insurance Company and Aspen American Insurance Company*

DLA PIPER LLP (US)

By:______________________________
Benjamin S. Boyd
*benjamin.boyd@dlapiper.com*
(VSB #28427)
500 8th Street NW
Washington, DC 20004
(202) 799-4502

*Counsel for Continental Casualty Company*